IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALEXANDER MANUFACTURING,                          CV. 06-735-PK
INC. EMPLOYEE STOCK OWNERSHIP
AND TRUST                                         OPINION & ORDER
                          Plaintiff,

v.


ILLINOIS UNION INSURANCE CO.,
                          Defendants.
——————————————————

PAPAK, Magistrate Judge:

        Plaintiff, Alexander Manufacturing Inc. Employee Stock Ownership Plan and Trust

("ESOP") filed this suit against defendant Illinois Union Insurance Co. for breach of contract and

breach of implied covenant of good faith and fair dealing. ESOP is the assignee of three former

Alexander Manufacturing, Inc. ("AMI") directors, who were insured under a policy issued by

Illinois Union. The sole issue in these cross-motions for summary judgment is whether the

assignment of the policy from AMI to ESOP was valid. More specifically, does the anti-

assignment clause in the policy prevent assignment of pre-loss or post-loss rights, or both? For

Page 1 - OPINION & ORDER

the reasons stated below, this court concludes that the anti-assignment clause covers both pre-loss and post-loss rights, and defendant's motion for summary judgment should be granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

AMI and its directors were insured under an Illinois Union Insurance policy. One of the policy's terms is an "anti-assignment" clause, which states: "Assignment of interest under this Policy shall not bind Insurer unless their consent is endorsed hereon." There is no endorsement on the AMI policy that allowed for assignment.

An earlier lawsuit underlies the current dispute. In that suit, ESOP brought an action against AMI and three AMI directors, William Klutho, Daniel Spofford, and Donald Thoreson, claiming that the three directors breached their fiduciary duties and caused the value of AMI

shares held by ESOP to become worthless. ESOP alleged that CEO Klutho falsified AMI's financial records in early 2003 in order to make AMI appear more profitable than it actually was. ESOP claimed the two other directors, Spofford and Thoreson, had knowledge of the falsification.

In defense of the lawsuit by ESOP, Illinois Union offered to settle the case for $1,000,000 policy limits under the "Directors and Officers" coverage section provided by the policy[1], less amounts Illinois Union paid in defense and costs in the ESOP litigation, and less the amount Illinois Union paid to settle a related lawsuit on behalf of AMI. ESOP took the position that the policy limits were $2,000,000.[2] When Illinois Union declined ESOP's settlement proposal, ESOP and AMI directly settled the case for $1.3 million dollars.

Under the terms of the settlement, the directors paid $30,000 collectively and then assigned their rights under the Illinois Union policy to ESOP. ESOP agreed not to execute the remainder of the judgment against the directors; instead, ESOP would bring the claim against Illinois Union. Illinois Union consented neither to the settlement agreements nor the assignment of the policy to ESOP.

As assignee of the AMI directors, ESOP then filed this action against Illinois Union for breach of contract and breach of the implied covenant of good faith and fair dealing.

## ANALYSIS

---

[1]Under the Policy, ESOP had "Directors & Officers" and company liability coverage with a $1,000,000 limit. ESOP also had a fiduciary liability coverage with an additional limit of $1,000,000.

[2]*See* FN1, *supra*

Page 3 - OPINION & ORDER

Because this court has diversity jurisdiction over this matter, it is required to follow Oregon law with respect to the interpretation of an insurance policy. *Kabatoff v. Safeco Ins. Co. of America*, 627 F.2d 207, 209 (9th Cir. 1980). This court is bound, therefore, by Oregon Supreme Court precedent in this action.

## I. Applicable law

The Oregon Supreme Court has addressed the validity of anti-assignment clauses in insurance policies twice in the past forty years. In *Groce v. Fidelity General Ins. Co.*, 252 Or. 296 (1968), the Court addressed an anti-assignment provision almost identical to the provision in this case: "[a]ssignment of interest under this policy shall not bind the company until its consent is endorsed hereon...." 252 Or. 306. Without analysis, the Court rejected the insurer's argument that the language of the provision prohibits the assignment of post-loss causes of action against the insurer without the insurer's endorsement. Instead, the Court found that an anti-assignment clause that merely prohibits the assignment of an insured's "interest" does not prohibit the insured from assigning a cause of action that has accrued under the policy, such as "assignment of a cause of action for damages for breach of contract." *Id*. at 306. Citing to three California cases, the Oregon Supreme Court noted that the law was "well-settled," though it attempted no further analysis under Oregon law. *Id.*

Twenty-four years later, the Oregon Supreme Court laid out an "analytical approach to insurance contract construction" in *Hoffman Constr. Co. v. Fred S. James & Co.,* 313 Or. 464, 475-477 (1992). The Court noted that interpretation of insurance contracts is a question of law, and the "primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Id.* at 469 *citing Totten v. New York Life Ins. Co.*, 298 Or. 765, 770

(1985). The Court then stated, "we determine the intention of the parties based on the terms and conditions of the insurance policy." *Id.* The issue in *Hoffman* concerned the interpretation of the phrase "amount recoverable." Both plaintiff and defendant offered competing plain meaning interpretations to the Court. Plaintiff then argued that because the term was susceptible to two meanings, it was ambiguous and should be construed against the insurer, who drafted the policy. The Court disagreed, explaining that before resorting to the rule of construction against the insurer, the Court must engage in a series of analytical steps:

> In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, i.e., continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

*Id.* (emphasis in original)

Reaffirming and elaborating on the analytical approach introduced in *Hoffman*, the Oregon Supreme Court, in 2006, construed an anti-assignment clause in an insurance policy. *Holloway v. Republic Indemnity Company of America*, 341 Or. 642 (2006). In *Holloway*, the plaintiff (Holloway) sued the insured, claiming that she had been sexually harassed while in the employment of the insured. The insurer (Republic) refused to defend and indemnify the insured from Holloway's claim. Holloway and the insured then settled the case. *Id.* at 646-47. Under the settlement, the insured assigned to Holloway the insured's right to defense and indemnity under the Republic policy. *Id.* Upon receiving the assignment, Holloway brought an action for breach of contract against Republic. There was, however, an anti-assignment clause in the insurance policy that stated, "Your rights or duties under this policy may not be transferred without our written consent." *Id.* at 644.

Page 5 - OPINION & ORDER

The Court of Appeals held that the provision was ambiguous because it did not define which particular "rights or duties" could not be assigned; therefore, it construed the clause in favor of the insured and found that the clause only precluded the assignment of pre-loss rights or duties. Since Republic's insured had only assigned post-loss rights or duties, the Court of Appeals held that the anti-assignment clause did not prevent the assignment. *Id*. at 648-49. In so doing, the Court of Appeals noted that their conclusion "is consistent with what appears to be the majority rule." *Id*.[3]

The Oregon Supreme Court reversed. The Court first reaffirmed and elaborated on the analytical approach introduced in *Hoffman*. *Holloway, 341 Or.* at 650, stating that: if the insurance policy explicitly defines the phrase in question, the court applies that definition; if the policy does not define the phrase in question, the court first must consider whether the phrase has a plain meaning. *Id*; if the phrase in question has a plain meaning, the court must apply that meaning and no further analysis is needed; and if the phrase in question has more than one plausible interpretation, the next task is to examine the context in which the phrase is used and the broader context of the policy as a whole. *Id*. After this contextual examination, any

---

[3]Numerous other jurisdictions have reached conclusions similar to that of the *Groce* court and the Court of Appeals in *Holloway*. For example, in *Elat v. Aetna Casualty & Surety Co.*, 280 N.J. Super. 62, 654 A.2d 503 (1995), the anti-assignment provision read "Assignment of interest under this policy shall not bind the Company unless and until their consent is endorsed hereon." 654 A.2d at 505. The Court considered whether this language prohibited the assignment of a policy or the assignment of a claim. In concluding that the language prohibited policy assignment, and not claim assignment, the Court based its decision on the inapplicability of the policy reasons behind the prohibition of policy assignments, which is to protect the insurer from insuring a different risk than intended. *Id.* at 505. The purpose, therefore, rationally applies to prohibiting pre-loss policy assignments, where the insurer could be burdened with an entirely different risk than expected. However, the purpose does not apply to post-loss assignments of a claim. There, the loss is already ascertained and "only changes the identity of the entity enforcing the obligation to insure the same risk." *Id.* at 506.

Page 6 - OPINION & ORDER

remaining ambiguity should be construed against the drafter. *Id.*

Following this analytic framework, the Court held that the language of the anti-assignment clause was not ambiguous and the provision was broadly worded to include both pre-loss and post-loss rights. *Id.* at 652. Therefore, the assignment was invalid. In so holding, the Court distinguished authority to the contrary from other jurisdictions on the grounds that those courts did not follow Oregon's analytical approach to insurance contract construction. *Id.* at 652-53.

The parties here offer differing interpretations of the state of the law in Oregon regarding the interpretation of anti-assignment clauses in light of the *Groce* and *Holloway* decisions. ESOP argues that *Groce* is good law and based thereon that anti-assignment clauses only apply to pre-loss assignments. Illinois Union argues that *Holloway* holds that anti-assignment clauses are valid and apply to pre-loss and post-loss rights, thus implicitly overruling *Groce*, and controlling the decision in this case.

I do not agree with either position. *Groce* did not apply the *Hoffman* analytical approach to the anti-assignment clause before the Court. But *Holloway* did not overrule *Groce*. The *Holloway* court did not mention *Groce* in its opinion, and left no indication that the *Holloway* decision was intended to overrule all past anti-assignment contract interpretation cases. In fact, the *Holloway* court very clearly stated that the court must look to the language of the specific policy at issue to determine whether an assignment is valid. *Id.* at 649. Furthermore, the

language in the anti-assignment clause in Holloway differs from that used in the clause before this court.

Therefore, neither the decision in *Groce* nor *Holloway* is dispositive of the issue presented here. Since *Holloway* instructs the court that contract interpretation is a fact-specific endeavor, this court concludes that, while the *Holloway* decision is not dispositive of the issue presented here*, Holloway* does provide the appropriate framework for interpreting the terms of the anti-assignment clause contained in the policy in question.

**II. Application of Oregon law to present facts**

Following the Oregon Supreme Court's framework for analysis set out in *Holloway*, I conclude that the anti-assignment clause in the present case covered both pre-loss and post-loss claims. Therefore, summary judgment should be granted to Illinois Union.

The anti-assignment clause here reads: "Assignment of interest under this Policy shall not bind Insurer unless their consent is endorsed hereon." The disagreement between the parties occurs over the terms "interest" and "endorse." The policy does not provide an explicit definition for either term; therefore, this court must decide whether those terms have a plain meaning.

ESOP argued that the term "interest" applies only to pre-loss assignments; post-loss assignments, on the other hand, would be precluded by the use of the phrase "rights and duties," similar to the anti-assignment clause in *Holloway*. Under this interpretation, rights and duties do not arise until a post-loss situation, while interest applies at the outset of contract formation. Illinois Union maintains that the plain definition of "interest" includes the terms "rights and duties."

This court finds that the term "interest" has a plain meaning. Black's Law Dictionary defines "interest," as:

> 1. The object of any human desire; esp., advantage or profit of a financial nature (conflict of interest) 2. A legal share in something; all or part of a legal or equitable claim to right or property (right, title and interest). Collectively, the word refers to any aggregation of rights, privileges, powers and immunities; distributively, it refers to any one right, privilege, power or immunity.

BLACK'S LAW DICTIONARY 828 (8th ed. 2004). In standard dictionaries, "interest" is defined as "right, title, or legal share in something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1178 (1993). "Interest" includes "rights" under the prevailing interpretation of the word. In addition, insurance contracts frequently include the words together as "interests, rights and duties." Often, the words are used interchangeably. Nothing in the definition of "interest" limits its application, as ESOP argues, to pre-loss assignments. Nor, as ESOP argues, is the term ambiguous; instead, "interest" has a broad definition that would include both interest and right in the policy and interest and rights in claims arising under that policy. As a result, the anti-assignment clause in the Illinois Union policy is not limited by the term "interest" to pre-loss assignments.

ESOP further argues that use of the term "endorsed" in the anti-assignment clause evinces an intent to limit the clause to pre-loss assignments. ESOP equates the phrase "endorsed hereon" with an insurance policy "endorsement." "Endorsement," a noun, is "an amendment to an insurance policy, a rider." BLACK'S LAW DICTIONARY 569 (8th ed. 2004). ESOP argues that the phrase "endorsed hereon" in the Illinois Union policy means an actual written form of endorsement attached to the policy. Endorsements to the policy are handled by Illinois Union's Underwriting Department, typically at the time of policy issuance or renewal. Underwriters do not, as ESOP points out, handle any post-loss claims issues. Equating "endorsed hereon" with an

Page 9 - OPINION & ORDER

"endorsement" leads to the conclusion that, since underwriters issue endorsements, an insurance company would only consent to assignment, through endorsement, in a pre-loss situation.

I am not persuaded by ESOP's reasoning. ESOP's argument would require this court to look at the context in which the term "endorsed" was used and the broader context of the issuance of the policy. This is unnecessary and, in fact, inappropriate because the phrase "endorsed hereon" has a plain meaning: "to sign." *See Id.* at 789; THE AMERICAN HERITAGE COLLEGE DICTIONARY 454 (3d ed. 1997) ("To place (one's signature), as on a contract, to indicate approval of its contents or terms."). A reasonable interpretation of the phrase "endorsed hereon" is that the insurer must give written consent on the face of the policy to an assignment for that assignment to be valid. Nothing in the phrase suggests a pre-loss limitation or suggests that "endorsed hereon" contains any exclusion of post-loss rights, and "reading such an exception into the policy would not be reasonable and would 'insert what has been omitted.' " *Holloway*, 341 Or. at 651 (internal citation omitted).

Similar to the anti-assignment clause in *Holloway*, the Illinois Union policy is "worded broadly: it contains no exceptions or qualifications." *Id.* According to *Holloway*, "reading an exclusion into a broadly worded anti-assignment clause based upon the clause's silence regarding its application to a particular situation would be an unreasonable interpretation." *Id.* at 652. Following the analytical framework of *Holloway*, this court concludes that the only reasonable interpretation of the anti-assignment clause in Illinois Union's policy is that it prohibits the assignment of the insured's interest, regardless of whether that interest accrues pre-loss or post-loss, absent written consent by Illinois Union.

## III. Motion to Strike

Also before this court is ESOP's Motion to Strike (No. 39) part of the affidavit filed by

Michael Bigger on behalf of Illinois Union. I find it unnecessary to address the merits of this

motion because Mr. Bigger's testimony focuses on the practices, customs, and context of policy

and endorsement issuance. Since the terms in question have a plain meaning, the context of

policy issuance is irrelevant to this decision. Since I did not rely on the disputed portion of

Bigger's affidavit in this opinion, ESOP's motion is denied as moot.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (No. 24 ) is

GRANTED; plaintiff's cross-motion for summary judgment (No. 28) is DENIED. Plaintiff's

Motion to Strike (No. 39) is DENIED as moot.

IT IS SO ORDERED.

Dated this 27th day of August, 2007.


    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge