FILED
FEB 2 2 2010

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

ALEXANDER MANUFACTURING,
INC. EMPLOYEE STOCK OWNERSHIP
AND TRUST

                  Plaintiff,

v.

ILLINOIS UNION INSURANCE CO.,

                  Defendant.

CV. 06-735-PK

OPINION & ORDER

---

PAPAK, Magistrate Judge:

    Plaintiff Alexander Manufacturing Inc. Employee Stock Ownership Plan and Trust (Trust) filed this suit against defendant Illinois Union Insurance Company for breach of contract and breach of good faith and fair dealing. The Trust is the assignee of three former Alexander Manufacturing officers, who were insured under a policy issued by Illinois Union. Following this court's ruling on the parties' cross motions for summary judgment, Illinois Union made an offer of judgment, which the Trust accepted. The Trust's motion for attorney fees and costs

Page 1 - OPINION & ORDER

(#129) is now before the court. The Trust's motion is granted in part and denied in part, for the reasons set forth below.

## FACTUAL BACKGROUND

Illinois Union insured Alexander Manufacturing, Inc. under a policy that included both directors and officers liability coverage and fiduciary liability coverage, each with a limit of $1,000,000. (Opinion & Order, #121, at 2.) In early 2003, Alexander Manufacturing's chief executive officer, William Klutho, provided false financial information to the company's accountants, with the knowledge of two other company officers. *Id.* at 6. Based on the false information, Alexander Manufacturing's accountants prepared a 2002 financial statement indicating that the company made a small profit that year when in fact the company had incurred substantial losses. *Id.* at 6-7.

I.     **The Underlying Coverage Dispute**

The Trust, which is an employee pension plan and the sole shareholder of Alexander Manufacturing, Inc., filed an action against Klutho and the two other officers in late 2004. *Id.* at 8. In December 2004, Klutho's counsel sent a letter and a copy of the complaint to Illinois Union. (Bernstein Decl. Ex. A.) The letter indicated that Klutho believed the claims fell under Illinois Union's coverage and asked whether Illinois Union would defend. *Id.* Illinois Union retained counsel for the officers and Alexander Manufacturing. (Opinion & Order at 9.) The attorney conducted discovery and, by July 2005, was able to estimate the damages that the Trust would assert at trial. (Bernstein Decl. Ex. B.)

The parties entered mediation in October 2005, after Illinois Union rejected the Trust's offer to settle for what it asserted as the applicable policy limit: $1 million under the fiduciary coverage and $1 million under the directors and officers coverage. (Opinion & Order at 9-10.)

Page 2 - OPINION & ORDER

Illinois Union's coverage counsel threatened to rescind the contract, despite having no real basis to do so. *Id.* at 11. Illinois Union's counsel, however, also offered to "use his resources" to settle the claim for approximately $300,000, the limit remaining under the directors and officers coverage. *Id.* at 10. Illinois Union was unwilling to arbitrate the reasonableness of the fees and costs it had deducted from the available coverage limit, although the Trust expressed an interest in doing so. (Maurer Supp. Aff., #139 at 3.) The $300,000 figure quoted by Illinois Union as the approximate policy limit was in error, however. (Opinion & Order at 10.) Illinois Union overestimated defense costs and actually had approximately $377,000 to $458,900 available under the directors and officers coverage. *Id.*

The Trust then offered to settle for the amount remaining under the fiduciary policy limits minus defense costs, an amount it estimated to be $620,000. (Maurer Supp. Aff., #139 at 3; Opinion & Order at 11.) Illinois Union rejected that offer but later that same day made a written offer to settle for the amount remaining under the directors and officers coverage. (Opinion & Order at 11-12.) Before the Trust received Illinois Union's written offer to settle, however, it entered into an agreement with Alexander Manufacturing and its officers. *Id.* at 12.

As part of the settlement agreement, the parties agreed that the officers would each pay $10,000 from their personal assets and that the officers would stipulate to a judgment of an additional $1.3 million against them. *Id.* The Trust, however, agreed not to file the $1.3 million judgment or proceed against the officers' personal assets for that amount. *Id.* In exchange, Alexander Manufacturing and its offers assigned their rights under the policy to the Trust.

## II.    The Parties Efforts to Settle the Current Suit

The Trust then brought suit against Illinois Union to recover under the insurance policy. The parties filed cross motions for summary judgment on the validity of the officers' assignment

Page 3 - OPINION & ORDER

of their claims under the policy. This court granted defendant's motion, denied plaintiff's motion and dismissed the case. The Ninth Circuit reversed that decision on appeal. *Alexander Mfg. v. Illinois Union Ins. Co.*, 560 F.3d 948 (9th Cir. 2009).

Following the appeal, the Trust sent a settlement demand to Illinois Union, asserting that Illinois Union had an obligation to indemnify the Trust for $1.3 million. (Bernstein Decl. Ex. C.) Illinois Union offered $245,000 to settle all claims and threatened further expensive litigation if the Trust did not accept. (Maurer Supp. Aff. at 3.) The parties failed to reach a settlement and resumed briefing on Illinois Union's motions for summary judgment on several coverage issues and on the Trust's bad faith claim.

On September 16, 2009, after the Trust filed a cross motion for summary judgment on its bad faith claim, Illinois Union offered to settle for $425,000 "inclusive of all claims." (Bernstein Decl. Ex. D.) The Trust responded that it would never settle for that amount. *Id.* The Trust, however, later inquired whether Illinois Union would settle for $700,000. (Bernstein Decl. Ex. E.) In response, on September 24, 2009, Illinois Union reiterated its $425,000 offer. *Id.* The Trust rejected the counter offer and indicated that it "no longer desired to seek a mutual resolution." (Bernstein Decl. Ex. F.)

I ruled on the dispositive motions one month after the parties' attempts to settle. I denied Illinois Union's motion on four coverage issues but granted its motion asserting that a common claim endorsement limited the coverage available to the amount remaining under the directors and officers portion of the policy. I denied the Trust's cross motion on that issue. I also denied the parties' cross motions on plaintiffs' bad faith claim because material questions of fact remained. I found, however, that the most the Trust could recover under that claim was the amounts the officers paid from their individual assets, because that was the only actual loss that

Page 4 - OPINION & ORDER

they suffered as a result of the settlement.

After I issued my opinion, Illinois Union made an offer "pursuant to Rule 68 of the Federal Rules of Civil Procedure" for a judgment in favor of the Trust "in the total sum of $425,000, exclusive of recoverable attorney fees and costs, if any, but inclusive of any and all other claims for relief." (Pl.'s Acceptance of Offer of Judgment, #125.) The Trust accepted. Upon the stipulation of the parties, I entered a judgment of $425,000 against Illinois Union, with "fees and costs, if any" to be determined. (Judgment, #128.)

## III.    The Trust's Attorney Fee Petition and Bill of Costs

The Trust now seeks $433,792.75 in attorney fees.[1] The Trust's counsel avers that he discounted the petition by $50,000 for fees related to claims that were not covered under the applicable attorney fee statute or that were potentially redundant.

The Trust also seeks $40,137.93 in costs. The Trust's bill of costs, however, does not include any accompanying documentation. In addition, the Trust seeks costs related to travel, lodging, long distance phone service, parking, mail services and mediation in addition to other expenses.

## LEGAL STANDARD

Federal Rule of Civil Procedure 68 provides, in relevant part, "[A]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). The term "costs" in Rule 68 refers "to all costs properly awardable under the relevant substantive statute or other authority." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1027 (9th Cir.

---

1  The time entries provided by the Trust's counsel, however, add up to $429,943 a $3,849.75 difference from the Trust's total fee request. The first page of the billing entries appears to be missing, which may account for the discrepancy. I have therefore excluded $3,849.75 from the request.

Page 5 - OPINION & ORDER

2003) quoting *Marek v. Chesny*, 473 U.S. 1, 9 (1985). Thus, "costs" under Rule 68 include the

costs "provided for in 28 U.S.C. § 1920, which is the general federal cost statute." *Sea Coast*

*Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1060 (9th Cir. 2001). In addition,

"[a]bsent congressional expressions to the contrary, where the underlying statute defines 'costs' to

include attorneys' fees, such fees are to be included as costs for purposes of Rule 68." *United*

*States v. Trident Seafoods Corp.*, 92 F.3d 855, 860 (9th Cir. 1996).

## DISCUSSION

### I.     Bill of Costs

#### A.     Whether Plaintiff Is a Prevailing Party

To constitute a Rule 68 offer, a settlement offer must "allow judgment on specified terms,

with the costs then accrued." Fed. R. Civ. Proc. 68(a); *Marek*, 473 U.S. at 6 ("As long as the

offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer

will be valid.") "In order to determine whether an offer of settlement comports with the

requirements of Rule 68, a court will ordinarily apply the usual rules of contract construction."

*Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993). Those rules dictate that

"ambiguities will be construed against the offeror as the drafting party and, where such

ambiguities are found to exist, extrinsic evidence of the parties' actual intentions will be

examined to clarify those ambiguities and arrive at the meaning of the offer's material terms."

*Id.*

Here, Illinois Union's offer is ambiguous regarding whether it includes costs. Illinois

Union stated that the offer was "pursuant to Rule 68" for a judgment in favor of the Trust "in the

total sum of $425,000, exclusive of recoverable attorney fees and costs, if any, but inclusive of

any and all other claims for relief." Thus, the offer could be read to exclude a claim for costs.

Page 6 - OPINION & ORDER

On the other hand, the phrase "exclusive of recoverable attorney fees and costs" suggests that the $425,000 sum covered all claims except fees and costs, thus leaving fees and costs to be determined. In addition, Illinois Union's reference to Rule 68 in the offer further suggests that the offer included costs in an amount to be determined. Moreover, the stipulated judgment specifically provided that the Trust could seek costs. I therefore conclude that Illinois Union's offer included costs.

If an offer meets the requirements of Rule 68, "[i]t is apparent that the rule does provide for costs to the accepting party." *Sea Coast Foods, Inc.*, 260 F.3d at 1059. Thus, although courts normally have discretion under Federal Rule of Civil Procedure 54(d) regarding whether to award costs to the prevailing party, when Rule 68 applies, it leaves no room for district court discretion. *See Delta Air Lines v. August*, 450 U.S. 346, 354 (1981) (holding that Rule 68 does not apply when a defendant/offeror obtains a judgment in its favor).

Here, Illinois Union argues that the Trust is not entitled to costs because the Trust is not a prevailing party under Federal Rule of Civil Procedure 54. Illinois Union, however, made a Rule 68 offer. Thus, Rule 54 does not apply here. The Trust is entitled to costs because it accepted Illinois Union's Rule 68 offer.

### B.    Verification Requirement

Pursuant to Local Rule 54.1(a)(1), a party seeking costs must provide a "detailed itemization of all claimed costs" and "appropriate documentation." L.R. 54.1(a)(1). In addition, Local Rule 54.1(a)(2) requires that the party seeking costs verify the cost bill as required by 28 U.S.C. § 1924. L.R. 54(a)(2). Under 28 U.S.C. § 1924, the party seeking costs must submit an affidavit stating that the items in the cost bill are correct and that the costs were "necessarily incurred in the case and that the services for which fees have been charged were actually and

Page 7 - OPINION & ORDER

necessarily performed." 28 U.S.C. § 1924.

Here, the Trust's bill of costs does not comply with Local Rule 54(a) and § 1924. The Trust submitted a fee statement that contained both its fees and costs, along with an affidavit from its counsel stating that he reviewed the fees in the fee statement for accuracy and that he found the fees were reasonably and necessarily incurred. Thus, the Trust's counsel verified the fees, but not the accompanying costs. More importantly, the Trust has not provided appropriate documentation. The Trust, however, can remedy these defects. I therefore deny the Trust's bill of costs with leave to file an amended bill of costs that complies with Local Rule 54.1. *See Alfonso v. Tri-Star Search LLC*, No. 07-1208, 2009 U.S. Dist. LEXIS 72743, at *26 (D. Or. Aug. 14, 2009) (denying bill of costs with leave to amend where the party seeking costs failed to provide supporting documentation).

### C.    Whether Plaintiff's Costs Are Reasonable

Title 28 U.S.C. § 1920 provides that a court may tax the following as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title [28 USCS § 1923];
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

28 U.S.C. § 1920. A district court may not tax costs beyond those authorized by § 1920. *Frederick v. City of Portland*, 162 F.R.D. 139, 142 (D. Or. 1995) citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-442 (1987). Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920. *Alflex Corp. v.*

*Underwriters Lab., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (per curiam).

Here, assuming that the Trust files an amended cost bill that complies with Local Rule 51.1, it may only seek costs allowed under section 1920. Thus, the Trust cannot recoup costs for courier, mail, telephone, and computerized legal research charges because they are outside the scope of § 1920. *See Tasakos v. Welliver Mental Prods. Corp.*, No. 04-6205, 2005 U.S. Dist. LEXIS 4654 at *5 (D. Or. Mar. 16, 2005) (citing cases). Moreover, a party's travel expenses are not recoverable under § 1920. *Banta v. City of Merrill*, No. 06-3003, 2007 U.S. Dist. LEXIS 84818, at *12-13 (D. Or. Nov. 14, 2007).[2] In addition, "nothing in 28 U.S.C. § 1920 provides for the cost of a mediator." *Sea Coast Foods, Inc.*, 260 F.3d at 1061. Finally, fees of outside counsel are "plainly not recoverable as costs." *Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217 (7th Cir. 1975).

Moreover, restrictions apply to certain costs that are recoverable under § 1920. For example, § 1920 allows recovery of costs for photocopies and transcripts only if those costs were "necessarily obtained." 28 U.S.C. § 1920(2), (4). Thus, costs related to depositions that "were merely useful for discovery" are not taxable. *Independent Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963). Similarly, a party cannot recover costs for copies prepared for the convenience of the attorneys. *Arboireau v. Adidas Salomon AG*, No. 01-105, 2002 U.S. Dist. LEXIS 20342, at *18 (D. Or. June 14, 2002). In addition, the fees to which witnesses are entitled are set forth in 28 U.S.C. § 1821. The Trust must take these rules into

---

2   Courts, however, have found that an attorney fee award under 42 U.S.C. § 1988 may encompass out-of-pocket expenses, including travel expenses, normally charged to fee-paying clients. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). The Trust does not address whether they are entitled to travel expenses as part of the attorney fee award authorized under the Oregon Revised Statute section 742.061. Even if the Trust raised this argument, however, I would not allow it to recover travel expenses because the Trust's attorney fee award should not be any greater than what I have set forth below, in light of the Trust's limited success.

account when it submits its amended bill of costs.

## II.    Motion for Attorney Fees

In this diversity case, Oregon law determines entitlement to fees. *See Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995). The Trust seeks attorney fees under Oregon Revised Statute section 742.061, which provides, in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance . . . and the plaintiff's recovery exceeds the amount of any tender made by the defendant . . . a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

Or. Rev. Stat. § 742.061(1).[3] The legislature adopted the statute to "encourage settlement" and to "reimburse successful plaintiffs reasonably for moneys expended for attorneys fees in suits to enforce insurance contracts." *Douglass v. Allstate Ins. Co.*, 152 Or. App. 216, 221, 953 P.2d 770 (1998) quoting *Chalmers v. Or. Auto Ins. Co.*, 263 Or. 449, 452, 502 P.2d 1378 (1972) (describing Or. Rev. Stat. § 743.114, the predecessor to § 742.061).

### A.    Whether Illinois Union Timely Tendered Coverage Limits

"[A]ny event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims) qualifies as 'proof of loss' for the purposes of [Oregon Revised Statute section 742.061]." *Parks v.*

---

3  Although Section 742.061 states that attorney fees "shall be taxed as part of the costs," the Trust does not argue that it is entitled to attorney fees under the terms of Illinois Union's Rule 68 offer. *See Marek,* 473 U.S. at 9 ("[A]bsent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."). Rather, the parties argue whether the Trust is entitled to fees under section 742.061. *See Sea Coast Foods, Inc.*, 260 F.3d at 1059-1060 (finding that the plaintiff's acceptance of the Rule 68 offer merely entitled it to seek fees because the applicable attorney fee statute distinguished between fees and costs and the offer was silent regarding whether attorney fees were included as part of the total sum for which judgment would be entered.)

*Farmers Ins. Co.*, 347 Or. 374, 381, __ P.3d __ (2009) (insured's phone call to insurance agent reciting the amounts he paid and expected to pay to clean up contamination constituted a proof of loss). The proof of loss does not require that the insured calculate the loss with sufficient specificity to enable the insurer to make a settlement offer. *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 30, 985 P.2d 796 (1999) (complaint seeking remediation costs in excess of $6,000 in an amount to be proved at trial constituted a proof of loss). Rather, "the question is whether the insurer could have made the necessary calculation had it made a reasonable inquiry." *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*, 222 Or. App. 453, 494, 194 P.3d 167 (2008) (insured's letter to insurer stating that the Oregon Department of Environmental Quality named it a potentially responsible party for a contamination site constituted a proof of loss despite that it did not specify defense costs).

Here, Illinois Union argues that the Trust's December 2004 letter and the accompanying complaint did not constitute a sufficient "proof of loss" because it did not provide sufficient information for Illinois Union to estimate its indemnity obligations. Illinois Union argues that the soonest it received notice of it obligations was July 25, 2005, when the attorney it retained provided an estimate of the Trust's damages. The Trust's complaint, however, sufficiently described the Trusts' claims and basis for damages to allow Illinois Union to timely determine its potential indemnity obligation. In fact, the attorney Illinois Union hired to defend the insureds was able to estimate the damages by July and nothing indicates there was any reason he did not do so sooner. I therefore find that the December 2004 letter constituted a proof of loss under section 742.061.[4]

---

4  Illinois Union also argues that the Trust cannot recover fees incurred in the six months immediately following the proof of loss. This argument is irrelevant because the earliest time entry in the Trust's fee petition is October 2005, which is more than six months after the December 2004 proof of loss. Moreover, section 742.061 "was not intended to postpone

Page 11 - OPINION & ORDER

Under section 742.061, "only a timely tender . . . can defeat a prevailing insured's right to attorney fees." *Dockins*, 329 Or. at 33. Illinois Union did not make a timely tender because it did not offer to settle until October 2005, more than six months after it received the December 2004 proof of loss. As a result, I find that the Trust is entitled to attorney fees under section 742.061.

**B.      Whether Section 742.061 Applies If the Insurer Did Not Deny Coverage**

Section 742.061 does not apply "to any situation where an insurance company, as an innocent stakeholder, is willing to pay policy proceeds to whomever they might belong." *Gore v. Prudential Ins. Co. of Amer.*, 265 Or. 12, 16, 507 P.2d 20 (1973) (insured was not entitled to attorney fees where the insurer was willing to fully pay life insurance benefits but faced multiple possible beneficiaries). The exception in *Gore*, however, only arises in situations where the insurer "tendered the full amount of the policy and did not affirmatively dispute the plaintiff's entitlement to a complete recovery." *Douglass*, 152 Or. App. at 221. Thus, where the insurer admits coverage but negotiates to limit its liability, the insured is entitled to fees under section 742.061 if the insured's recovery exceeds the insurer's tender. *Id.* at 119 (insured entitled to attorney fees where insurer only disputed the amount of plaintiff's noneconomic damages and ultimately rejected plaintiff's claim without tender of payment); *Continental Cas. Ins. Co. v. Zurich Amer. Ins. Co.*, No. 07-913, 2009 U.S. Dist. LEXIS 55694, at *6-7 (D. Or. June 30, 2009) (plaintiff entitled to attorney fees under section 742.061 despite insurer's claim that it negotiated in good faith concerning the extent of its obligation to the insured).

Here, Illinois Union contends that Oregon Revised Statute section 742.061 does not

---

litigation or defer recovery by an insured." *Dockins*, 329 Or. at 29 (citation omitted). "In other words the statute seeks to protect insureds from the necessity of litigating their valid claims. It has no converse purpose of protecting insurers from litigation." *Id.*

Page 12 - OPINION & ORDER

justify a fee award because Illinois Union did not deny coverage but rather tendered the amount

remaining under the directors and officers coverage.  As explained above, however, Illinois

Union did not make a timely tender.  Moreover, Illinois Union's purported offer consisted of a

statement by counsel that he would "use his resources" to settle the claim for $300,000, the

amount remaining under the directors and officers coverage, when at least $377,000 in directors

and officers coverage remained.[5]  Thus, even if Illinois Union's tender was timely, the situation

here is unlike the situation in *Gore* because Illinois Union did not tender the full amount of the

available coverage.  In addition, the case law is clear that good faith does not relieve an insurer

of its liability for attorney's fees under section 742.061.  *See Continental Cas. Ins. Co.*, 2009 U.S.

Dist. LEXIS 55694, at *7 quoting *Hardware Mut. Cas. v. Farmers Ins.*, 256 Or. 599, 612, 474

P.2d 316 (1970) ("Recovery of attorney fees under our statute is not defeated by the insurer's

good faith in failing to settle.  The statute is compensatory, not penal.")  I therefore conclude that

section 742.061 applies here.

### C.    Apportionment of Fees

A liability insurer has a duty of care when it undertakes to defend its insured that "exists

independent of the contract and without reference to the specific terms of the contract."

*Georgetown Realty v. Home Ins. Co.*, 313 Or. 97, 110-111, 831 P.2d 7 (1992).  Thus, a claim that

an insurer acted negligently or in bad faith in failing to settle a claim "by definition is not an

action on a policy of insurance within the meaning of [Oregon Revised Statute section]

742.061." *Goddard v. Farmers Ins. Co.*, 177 Or. App. 621, 625, 33 P.3d 1075 (2001).  In other

words, section 742.061 does not authorize fees related to a tort claim against an insurer.  *Id.*

---

5  Although Illinois Union later made a written offer for the amount remaining under directors
   and officers coverage, it made that offer too late because the insureds had already settled with
   the Trust.

"When a party prevails in an action that encompasses both a claim for which attorney fees are authorized and a claim for which they are not, the trial court must apportion attorney fees, except when there are issues common to both claims." *Bennett v. Baugh*, 164 Or. App. 243, 247, 990 P.2d 917 (1999). When the claims involve common legal issues, however, the court need not apportion fees, because "the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." *Id.* at 248-249 (defendants could not recover fees for their unfair debt collection practices counterclaim because that claim did not overlap or duplicate the issues in the contract action); *see also Farmers Ins. Co. v. Trutanich*, 123 Or. App. 6, 17, 858 P.2d 1332 (1993) (trial court did not abuse its discretion when it apportioned fees related to insured's intentional infliction of emotional distress claim from the fees awarded on the insured's contract cause of action).

Here, the Trust pursued a tort claim for bad faith against Illinois Union in addition to its contract claim. The parties agree that section 742.061 does not authorize fees related to that claim. The parties, however, dispute whether the Trust properly discounted the time spent on the bad faith claim from its attorney fee petition. In addition, the Trust seeks fees it incurred before it obtained rights under the policy. I address the apportionment issues further below

### 1.    Fees Incurred on the Bad Faith Claim

The Trust urges the court to rely on its $50,000 fee reduction as sufficient to apportion the fees spent on its bad faith claim. In support of that argument, the Trust contends that its bad faith claim shared common issues with its breach of contract cause of action and Illinois Union's counterclaim asserting no duty to indemnify. I find that argument unpersuasive.

The proof required for a contract claim that an insurer breached the duty to indemnify is different from the proof required for a tort claim that an insurer acted in bad faith in failing to

Page 14 - OPINION & ORDER

settle a claim. An insured seeking to enforce a contractual duty to indemnify must show that the actual facts giving rise to the insurance claim demonstrate a right to coverage. *Northwest Pump & Equip. Co. v. American States Ins. Co.*, 144 Or. App. 222, 227, 925 P.2d 1241 (1996). Moreover, "[t]he scope of an insurer's risk is determined by the terms of the policy, not by the conduct of the parties subsequent to execution." *Id.* In contrast, to prevail in a claim for negligent or bad faith failure to settle within policy limits, an insured must prove: 1) that the insurer breached its duty of care to the insured, 2) causation and 3) damages. *Goddard v. Farmers Ins. Co.*, 173 Or. App. 633, 638-639, 22 P.3d 1224 (2001). Thus, an action for breach of the duty to indemnify does not require proof regarding the insurer's conduct in handling the claim, whereas a tort claim for bad faith does entail inquiry into the insurer's conduct.

The Trust's fee petition includes fees attributable solely to its bad faith claim. I have reviewed the petition and eliminated fees related to discovery concerning Illinois Union's conduct and related to the summary judgment briefing on the bad faith claim. I have not, however, eliminated fees for entries related to document discovery, conferences with clients, and other communications related to the case, as the Trust would likely have incurred those fees irrespective of the bad faith claim. In total, I have eliminated $104,065 in fees to apportion fees related to the Trust's bad faith claim.[6]

6  The following 2006 time entries relate solely to the bad faith claim: November 7 (6 hours), November 9 and 17. In addition, the following 2007 entries relate solely to bad faith: February 20 (1.5 hours); April 2 – 25, April 26 (9.5 hours), June 6, June 7 (1.6 hours), June 11 (.9 hour), June 12 (2.7 hours), June 13 (.7 hour), June 14 (.9 hour), June 15 (1.3 hours), June 18 (.4 hour), June 20 (.4 hour), June 21 (.2 hour), June 25 (.4 hour), June 26 (.7 hour), June 28 (.3 hour), June 29 (.2 hour), July 2 (.2 hour), July 10 (.2 hour), July 18 (.3 hour), July 30 (.2 hour). Finally, the following 2009 entries relate solely to the bad faith claim: March 30 (1 hour), May 7 and 20, June 11, July 6 (4 hours), July 7, 12 and 13, July 14 (11 hours), July 15 and 28, July 29 (4 hours), July 30 and 31, August 5 – 13, August 27 (5 hours), September 8 – 18, September 22 (2 hours), September 23 (1 hour), September 24, September 25 (3 hours); September 28 – October 6.

## 2.    Fees Incurred Before Settlement of the Underlying Suit

As noted above, section 742.061 only justifies fees incurred in "an action on a policy of insurance." *Goddard*, 177 Or. App. at 625. Here, the Trust did not acquire any rights under the policy until the insureds assigned those rights to the Trust as part of the settlement agreement. The Trust, however, seeks fees it incurred in preparing the agreement. The Trust's fee petition shows that its counsel worked on the settlement agreement until December 19, 2005, although the agreement itself states it became effective as of October 20, 2005. Thus, it appears that the parties made the settlement agreement retroactive. Until the actual completion of the agreement, however, the Trust's counsel acted on behalf of the Trust as plaintiffs in the underlying litigation against the insureds. Thus, although neither party addresses the issue, I find that the Trust is not entitled to fees it incurred before the actual completion of the settlement agreement. I accordingly deduct $12,140 from the Trust's fee petition.[7]

## D.    Factors Under Oregon Revised Statute Section 20.075

Under Oregon law, the courts determine the reasonableness of attorney fees following the factors specified in Oregon Revised Statute section 20.075. *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or. 185, 188, 957 P.2d 1200 (1998). The opposing party's objections to the attorney fee award "play an important role" in framing the issues relevant to the court's decision. *Id.* at 189. Even absent objections from the opposing party, the court has an independent duty to review a fee petition for reasonableness. *See Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992); *Schumacher v. City of Portland*, No. 07-601, 2008 U.S. Dist. LEXIS 5443, at *6 (D. Or. Jan. 23, 2008). The court must provide "a brief description or citation to the factor or factors on which it

---

7  The following 2005 time entries relate to the preparation of the settlement agreement in the underlying case: October 20 – November 1, November 2 (4 hours), November 3, November 4 (.75 hour), November 18 – December 2, December 12 (1 hour), December 14, 15, 19 and 21.

Page 16 - OPINION & ORDER

relies when granting or denying an award of attorney fees" but has no obligation "to make

findings on other statutory criteria that play no role in the court's decision." *McCarthy*, 327 Or.

at 188.

### 1.    Oregon Revised Statute Section 20.075(1)

In assessing the reasonableness of a fee request, Oregon Revised Statute section

20.075(1) requires courts to consider the following factors:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to
> the litigation, including any conduct of a party that was reckless, willful,
> malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the
> parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others
> from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others
> from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and
> their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in
> pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under ORS
> 20.190.
>
> (h) Such other factors as the court may consider appropriate under the
> circumstances of the case.

Or. Rev. Stat. § 20.075(1).

Although Illinois Union argues that, under factor (g), the Trust should not recover

attorney fees because it is not a prevailing party, that argument is misplaced. Factor (g) asks the

court to consider whether "awarding both attorney fees and a prevailing party fee may

Page 17 - OPINION & ORDER

overcompensate a party." *Necanicum Inv. Co. v. Employment Dep't*, 345 Or. 518, 524, 200 P.3d

129 (2008). The Trust does not seek a prevailing party fee, however. Moreover, the Trust is

entitled to fees because it meets the requirements of Oregon Revised Statute section 742.061. I

therefore find factor (g) irrelevant to the Trust's fee petition.

I also find factors (b), (c), (d), (e) and (h) are either neutral or irrelevant. Factor (b) is

neutral because both parties had evidence to support their opposing claims and defenses and

presented objectively reasonable arguments. Or. Rev. Stat. § 20.075(1)(b). Factors (c) and (d)

are not relevant because section 742.061 places the obligation on insurers to promptly evaluate

claims and offer settlement where appropriate, and, as noted, neither party asserted meritless

claims or defenses. Or. Rev. Stat. § 20.075(1)(c), (d). Factor (e) is neutral because both parties

reasonably and diligently pursued their respective claims and defenses. Or. Rev. Stat. §

20.075(1)(e). Finally, neither party raises any additional considerations relevant under factor (h).

I address the remaining factors below.

### (a) The Conduct of the Parties in the Transactions or Occurrences that Gave Rise to the Litigation

This action arose out of an underlying dispute over the amount that Illinois Union owed

to indemnify its insureds. During that dispute, Illinois Union both misstated the amount of

coverage available and issued a baseless threat to rescind the contract during mediation. I

accordingly find this factor favors the Trust's fee petition.

### (f) The Objective Reasonableness and Diligence of the Parties in Pursuing Settlement

"A plaintiff with a contractually-based entitlement to prevailing party attorney fees

should not be penalized for an objectively reasonable rejection of a proposed settlement." *Erwin

v. Tetreault*, 155 Or. App. 205, 214, 964 P.2d 277 (1998). Rather, courts should consider: (1) the

Page 18 - OPINION & ORDER

likelihood of succeeding on claims and counterclaims; (2) the projected range of recovery; (3) the projected expense of continuing the litigation; and (4) the likelihood of recouping those costs or of exposure for the opposing party's expenses. *Id.* Thus, "[o]bjective reasonableness must be assessed in the light of the parties' circumstances and knowledge at the time the settlement was tendered and rejected and not by some post hoc reference to the result actually obtained." *Id.*

Here, I find that the Trust was not objectively reasonable when it rejected Illinois Union's $425,000 offer. The Trust rejected the offer outright, although the offer did not necessarily preclude the Trust from seeking attorney fees in addition to the $425,000. In addition, the offer took place after I indicated during oral argument on dispositive motions that I was inclined to side with Illinois Union's position on the common claim endorsement. Moreover, Illinois Union had already raised the argument that Trust could not prove damages to sustain its bad faith claim, an argument I partially accepted when I found that the Trust could recover only a relatively minor amount on that claim. Finally, when the Trust rejected the offer a second time, it also cut off all further settlement negotiations.

The Trust incurred fees related to trial preparation in October, both before and after I ruled on the dispositive motions. The Trust might have avoided those fees had it not refused settlement and cut off further settlement discussions. I therefore find that the Trust's fee award should be reduced by $15,631.25, which reflects the time the Trust's counsel spent on trial preparation in October 2009.[8] *See TIG Ins. Co. v. Travelers Ins. Co.*, No. 00-1780, 2003 U.S. Dist. LEXIS 26844, at *26 (D. Or. Mar. 24, 2003) (applying Oregon law and refusing to award fees incurred on the duty to defend issue after the party seeking fees rejected a settlement offer that would have favorably concluded that portion of the case).

---

8  I find the following entries relate to trial preparation: October 7-13, October 15 (5 hours); October 16 (5.5 hours), October 20 (6.75 hours).

Page 19 - OPINION & ORDER

### 2.      Oregon Revised Statute Section 20.075(2)

Oregon Revised Statute section 20.075(2) requires the court to consider the following

factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
>
> (c) The fee customarily charged in the locality for similar legal services.
>
> (d) The amount involved in the controversy and the results obtained.
>
> (e) The time limitations imposed by the client or the circumstances of the case.
>
> (f) The nature and length of the attorney's professional relationship with the client.
>
> (g) The experience, reputation and ability of the attorney performing the services.
>
> (h) Whether the fee of the attorney is fixed or contingent.

Or. Rev. Stat. § 20.075(2).  Factors (b), (e) and (h) are not relevant to this case.  The Trust's

counsel does not contend that his representation precluded him from taking on other cases.  Or.

Rev. Stat. § 20.075(2)(b).  The case did not impose unusual time limitations.  § 20.075(2)(e).

Finally, the Trust's counsel charged an hourly rate.  § 20.075(2)(h).  I address the other factors

below.

### (a) Time and Labor Required, the Novelty and Difficulty of the Questions Involved and the Skill Needed

I find that, on the whole, this case required more than the usual amount of time and effort.

This case entailed a difficult question concerning the validity of the assignment, on which the

Trust appealed and ultimately prevailed.  In addition, Illinois Union asserted four separate

motions for summary judgment on coverage issues and the Trust prevailed on three of those

Page 20 - OPINION & ORDER

issues.  Moreover, the Trust's bad faith claim involved factual development outside of the scope of ordinary contract disputes.  I also find, however, that some of the entries are not appropriate because they relate to clerical tasks or because they are vague, as described further below.

### i.    Clerical or administrative tasks

Courts typically consider fees for clerical tasks as overhead expenses reflected in the hourly billing rate, and thus not properly reimbursable in a award.  *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 861 (D. Or. 2002) (applying Or. Rev. Stat. § 20.075 and reducing the fee award because some of the time entries related to clerical tasks).

Here, the billing records contain time entries for scheduling depositions.  Although Illinois Union does not contest any entries for this reason, I have an independent duty to review the fee petition for reasonableness.  I accordingly reduce the fee award by $5,762.50, which reflects entries for clerical tasks.[9]

### ii.    Vague Entries

A number of the billing entries are unclear regarding the work involved.  For several entries related to the Trust's briefing on the summary judgment motions, it is unclear whether the work performed related to the coverage issue or the bad faith claim.  I therefore reduced those entries by half.[10]  *See Oglesby v. Western Stone & Metal Corp.*, No. 99-492, 2001 U.S. Dist.

---

9  I have deducted the following entries because they are related to clerical tasks: March 23, 2007 (2.5 hours), March 30, 2007 (1 hour); April 30, 2007 (1.5 hours); June 21 and July 18 2007, October 10, 2007 (1 hour), February 25, 2009 (1.5 hours), February 26, 2009 (1 hour), March 25, 2009 (1.5 hours), April 23 and 28, 2009 and June 25, 2009 (1 hour).  Several of the entries related to bad faith also involved clerical tasks, but I have already excluded them as related to the bad faith claim.

10 I reduced the fee award for the following entries by one half: July 3, 13 and 16, 2007, July 25, 2007, March 27, 2009, May 6 and 14, 2009, June 15, 2009, June 16, 2009 (2 hours), June 25, 2009 (3 hours), June 29, 2009, July 2, 2009 (4.25 hours), July 16, 2009, August 15, 18 – 21 and 28, 2009.

LEXIS 14439, at *30 (D. Or. Sept. 10, 2001) (applying Or. Rev. Stat. § 20.075 and reducing fees

by twenty-five percent for vague entries). In addition, other entries do not appear to relate to any

claim at issue in this case, or are so inadequately described that I cannot determine whether they

were reasonable.[11] I accordingly reduce the fee award by $15,865.25, which reflects entries

where the Trust's counsel failed to properly identify the tasks performed and the task was not

otherwise ascertainable by reviewing the docket.

### (c), (g) The Fee Customarily Charged in the Locality for Similar Legal Services and the Experience, Reputation and Ability of the Attorneys

The courts of this district use the most recent Oregon State Bar Economic Survey as a

benchmark to determine the fee customarily charged in the locality, and adjust the survey rates

for inflation between the date the survey was published and the date the legal services were

performed. *Schumacher,* 2008 U.S. Dist. LEXIS 5443, at *8-9 . The Oregon State Bar published

an economic survey in September 2002 and December 2007.[12]

Here, from October 2005 until the present, several attorneys performed work on behalf of

the Trust. I have compared the rates for Michael Maurer ($250 to $305 per hour),[13] Laura Black

($140 to 180 per hour) and Michael Hines ($295 per hour) to the inflated-adjusted economic

survey and have found them to be reasonable. Although Maurer's rate is higher than the average

rate for attorneys in Portland with twenty to thirty years of experience, I find his rate reasonable

---

11 I deducted the total fee listed for following entries due to vagueness: December 7, 2006, December 19, 2006 (1 hour); February 1, 2007 (.2 hour), May 3, 2007, November 1, 2007 (1 hour), April 24, 2009.

12 The Oregon State Bar economic surveys are available at: http://www.osbar.org/surveys_research/snrtoc.html.

13 My review of the billing records reveals that Maurer made $305 per hour starting in October 2009. Maurer did not disclose that he changed his rate at that time and instead represents to the court that his highest rate was $290.

Page 22 - OPINION & ORDER

in light of his level of experience. Moreover, Illinois Union does not contest the reasonableness

of the rates. I therefore conclude that there is no need to adjust the attorney fee award based on

the rates charged by the Trust's attorneys.

I refuse, however, to award fees for the work performed by Michael Franklin. The Trust

provided no information regarding Franklin by which I could determine the reasonableness of his

rate. I therefore deduct $502.50, which reflects the total of the entries for the work he

performed.[14]

### (d) The Amount Involved and the Results Obtained

Here, the Trust originally sought $1.3 million and ultimately obtained a $425,000

settlement. Illinois Union therefore argues that I should reduce the Trust's fee petition across the

board to reflect its limited success. I have, however, already reduced the fee petition to eliminate

entries related to bad faith, trial preparation, clerical tasks and vague time entries. As a result,

remaining entries relate to litigation of the coverage issues. With the exception of the common

claim endorsement, the Trust prevailed on all of those issues, including a successful appeal to the

Ninth Circuit. In addition, I note that the Trust has already discounted the fee petition by

$50,000. Accordingly, I find that no further reduction is needed to account for the Trust's limited

recovery in this case.

### (f) The Nature and Length of the Attorney's Relationship With the Client

The Trust has a longstanding relationship with its counsel, which began in with the

creation of the Trust in 1998. I do not find this factor particularly relevant, however, in light of

the fact that I have already considered that the Trust's counsel discounted $50,000 in fees.

---

14 I deducted the following entries: June 26 and 27, 2006, November 1, 2006, March 22, 2007,
August 3, 2007.

### E.      Summary

Based on the foregoing, I have deducted $157,816.25 out of the $433,792.75 that the Trust seeks in its attorney fee petition. As a result, the Trust is entitled to an attorney fee award of $275,976.50.

## CONCLUSION

The Trust's motion for attorney fees and costs (#129) is granted in part and denied in part. The Trust's bill of costs is denied with leave to file an amended bill of costs within one week of the date of this order. The Trust's motion for attorney fees is granted in part in the amount of $275,976.50.

IT IS SO ORDERED.

Dated this 22nd day of February, 2010.

Honorable Paul Papak
United States Magistrate Judge